UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JANET BLAKE, et al., | ) | |
|---|---|---|
| Plaintiff(s), | ) | |
| vs. | ) | Case No. 4:08CV00821 ERW |
| CAREER EDUCATION CORP., et al., | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court upon Plaintiffs' Motion to Remand [doc. #13].

## I.  BACKGROUND

On February 29, 2008, Janet Blake, Madison Leuschke, Tish Pate, Holly Moyer, Caley Mason, and Petite Smothers (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, filed a Class Action Petition against Career Education Corporation and Sanford Brown College, Inc. (collectively, "Defendants") in the Circuit Court of the County of St. Louis, Twenty-First Judicial Circuit. Plaintiffs allege that the Defendants violated the Missouri Merchandising Practices Act "by purposefully employing a pattern and practice of deception, fraud, and misrepresentation in the sale of the criminal justice degree program to potential students." The case was then removed to this court on June 5, 2008, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. On June 24, 2008, Plaintiffs filed the pending motion to remand the case to state court, alleging that federal jurisdiction is improper in that the amount in controversy is not greater than $75,000 and complete diversity of citizenship is lacking.

## II.  STANDARD FOR FEDERAL COURT JURISDICTION

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). If a federal court takes action in a dispute over which it lacks subject matter jurisdiction, that action is a nullity. *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18 (1951); *Hart v. Terminex Int'l*, 336 F.3d 541, 541-42 (7th Cir. 2003) (stating that it was "regrettable" that the case had to be dismissed for lack of subject matter jurisdiction "rendering everything that has occurred in [the] eight years [of litigation] a nullity"). However, "'[f]ederal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Barzilay v. Barzilay*, 2008 WL 2952427, at *4 (8th Cir. Aug. 4, 2008) (alteration in original) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). A claim may be removed to federal court only if it could have been brought in federal court originally; thus, the diversity and amount in controversy requirements of 28 U.S.C. § 1332 must be met, or the claim must be based upon a federal question pursuant to 28 U.S.C. § 1331. *Peters v. Union Pac. R.R. Co.*, 80 F.3d 257, 260 (8th Cir. 1996). The party invoking jurisdiction bears the burden of proof that the prerequisites to jurisdiction are satisfied. *Green v. Ameritide, Inc.*, 279 F.3d 590, 595 (8th Cir. 2002); *In re Bus. Men's Assurance Co.*, 992 F.2d 181, 183 (8th Cir. 1993).

Removal statutes must be strictly construed because they impede upon states' rights to resolve controversies in their own courts. *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 861 (8th Cir. 2002). Although a defendant has a statutory right to remove when jurisdiction is proper, the plaintiff remains the master of the claim and any doubts about the propriety of removal are resolved in favor of remand. *See In re Bus. Men's*, 992 F.2d at 183; *McHugh v. Physicians Health Plan of Greater St. Louis*, 953 F. Supp. 296, 299 (E.D. Mo. 1997). If "at any time before

2

final judgment it appears that the district court lacks subject matter jurisdiction," the case must be remanded to the state court from which it was removed. 28 U.S.C. § 1447(c).

**III.    DISCUSSION**

The Plaintiffs are seeking to remand this action to state court, asserting that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332. Jurisdiction under § 1332 requires a minimum amount in controversy in excess of $75,000, exclusive of interest and costs, and complete diversity of citizenship among the parties. The plaintiffs allege that neither the amount in controversy requirement nor the complete diversity requirement has been met and, thus, that federal jurisdiction is improper.

A.    <u>Amount in Controversy</u>

In regard to the amount in controversy requirement, the Eighth Circuit has established that when "the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum, the removing party . . . must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000." *In re Minnesota Mut. Life Ins. Co. Sales Practice Litig.*, 346 F.3d 830, 834 (8th Cir. 2003) (citing *Trimble v. Asarco, Inc.*, 232 F.3d 946, 959 (8th Cir. 2000)). To meet this burden, the removing party must present "some specific facts or evidence demonstrating that the jurisdictional amount has been met." *Hill v. Ford Motor Co.*, 324 F. Supp. 2d 1028, 1036 (E.D. Mo. 2004).

In determining the amount in controversy, the relevant question is not whether the verdict will ultimately exceed $75,000, rather, it is whether a finder of fact could legally conclude that the damages exceed that amount. *Riffert v. Walgreen Co.*, 2008 WL 495643, at *2 (E.D. Mo. Feb. 20, 2008) (citing *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)). If a particular case has more

3

than one plaintiff, those plaintiffs are generally not permitted to add their damages together to meet the amount in controversy requirement. *See Snyder v. Harris*, 394 U.S. 332 (1969). However, it is not necessary for all of the plaintiffs to satisfy the requirement. The United States Supreme Court has established that a district court can exercise diversity jurisdiction even though some plaintiffs have not incurred damages over $75,000, as long as one of the plaintiffs in the case is able to satisfy the amount in controversy requirement. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 558-66 (2005).

It is well established that, when calculating the amount in controversy, punitive damages are to be included. *Allison v. Security Benefit Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir. 1992) (citing *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943)). The Court is given great discretion in decisions involving claims for punitive damages and, hence, is required to closely scrutinize such claims. *Larkin v. Brown*, 41 F.3d 387, 389 (8th Cir. 1994) (quoting *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 n.1 (2d Cir. 1972), *aff'd* 414 U.S. 291 (1973)). However, when punitive damages are included, the "existence of the required amount must be supported by competent proof." *Id.* at 388-89 (quoting *Esler v. Northrop Corp.*, 86 F.R.D. 20, 28 (W.D. Mo. 1979)). In the specific context of a motion to remand, such proof may include evidence of similar cases in which punitive damages were awarded. *See Rodgers v. Wolfe*, 2006 WL 335716, at *3 (E.D. Mo. Feb. 14, 2006); *Gonzalez-Lopez v. Fahle*, 2005 WL 2708832 (E.D. Mo. Oct. 21, 2005). In addition, the party opposing remand may provide evidence of "plaintiff's conduct and representations, . . . the plaintiff's refusal to stipulate that she would not demand more than the jurisdictional amount, or an extensive list of serious and disabling injuries suffered by the plaintiff." *Schudy v. Gordon*, 2006 WL 859279, at *1 (W.D. Mo. March 28, 2006).

4

In the present case, the parties do not dispute that all six of the named Plaintiffs suffered individual actual damages that were significantly less than $75,000. Specifically, the alleged damages ranged from $27,541 to $36,861. However, the Plaintiffs, in their Petition, also allege that Defendants violated the Missouri Merchandising Practices Act ("MMPA") in a manner that was "outrageous, intentional and willful" and that justifies an award of punitive damages. Punitive damages are permitted, in the court's discretion, in MMPA cases. Mo. Rev. Stat. § 407.025(1). While the actual damages of each individual Plaintiff cannot be combined to meet the amount in controversy requirement, the punitive damages requested by each Plaintiff may be included to help that Plaintiff meet the individual requirement. In fact, in order to meet the amount in controversy requirement, only one of the Plaintiffs would need to have a legitimate claim for punitive damages in an amount that would raise his or her total damages to an amount greater than $75,000.

The nature of the motion to remand and the opposition thereof place the parties in a unique position. Here, the Plaintiffs must argue that their damages are lower than they would otherwise want to claim, while the Defendants must argue that the Plaintiffs are actually likely to recover much more than they claim. Considering all of the relevant factors, the Court is of the opinion that the Defendants have presented sufficient competent proof of potential punitive damages. The Defendants have provided the Court with evidence of extensive punitive damages awards in other MMPA cases in which actual damages were less than the actual damages the Plaintiffs seek in the present case. Additionally, as the Defendants point out in their Memorandum of Law in Opposition to Plaintiff's Motion to Remand, the Plaintiffs have failed to stipulate that they are not seeking damages in excess of $75,000. The Court is permitted to consider both the relevant punitive damages awards in other cases, and the Plaintiffs' failure to

stipulate, in its determination regarding the amount in controversy. The Defendants have proved, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.

B.      Diversity in Citizenship

The Defendants, as the party seeking federal jurisdiction under 28 U.S.C. § 1332, have the burden of establishing, by a preponderance of the evidence, that complete diversity exists. *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990). Complete diversity exists only when "'*each* defendant is a citizen of a different State from *each* plaintiff.'" *Id.* (quoting *Owen Equip. & Erection Co. v. Kroeger*, 437 U.S. 365, 373 (1978)). The citizenship of the parties is determined at the time that the lawsuit is initiated, and not at the time that the cause of action arose. *Id.* (citing *Smith v. Snerling*, 354 U.S. 91, 93 n.1 (1957)).

For purposes of diversity, a corporation is deemed to be a citizen of both its state of incorporation and its principal place of business. *Capitol Indemnity Corp. v. Russellville Steel Co.*, 367 F.3d 831, 835 (8th Cir. 2004) (citing 28 U.S.C. § 1332(c)(1)). However, each corporation can only have one principal place of business at any given time. *Id.* In order to determine which state serves as the corporation's principal place of business, the Eighth Circuit has adopted what is known as the "total activity test." *Id.* at 836 (finding "this test to be the most appropriate and least limiting of the tests other circuits have applied"). The total activity test is a hybrid of two tests from other circuits: the "nerve center" or "locus of operations" test, which focuses on the location of control and the decision-makers who exercise that control, and the "corporate activities" test, which focuses on the location of production and service activities. *Id.* at 835-36. As a result, "the total activity test looks at all corporate activities." *Id.* at 836.

It can be difficult to determine the principal place of business of a corporation that has its decision-making and corporate activities spread across a number of states. While the determination is primarily one of fact, *Blakemore v. Mo. Pac. R.R. Co.*, 789 F.2d 616, 618 (8th Cir. 1986), some guiding principles can be found in case law. For example, the Fifth Circuit, in an opinion cited by Eighth Circuit in its adoption of the total activity test, outlined some principles to be used as a "starting point":

> (1) when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business; (2) when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant; but (3) when the activity of a corporation is passive and the 'brain' of the corporation is in another state, the situs of the corporation's 'brain' is given greater significance.

*J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 411 (5th Cir. 1987). Similarly, the District of South Dakota applied these guidelines:

> Under the total activities test, if a corporation has its nerve center in one state and its production occurs in only a single other state, the latter state assumes greater importance in determining where the corporation's principal place of business is located. However, where a corporation has its nerve center in one state and its production or service activities are divided over two or more states, the nerve center assumes greater weight in determining where the corporation's principal place of business is located.

*Fed. Beef Processors, Inc. v. CBS Inc.*, 851 F. Supp. 1430, 1433 (D. S.D. 1994).

In the present case, it is undisputed that the Plaintiffs are all Missouri citizens for the purpose of determining if complete diversity exists. Further, it is undisputed that Defendant Career Education Corporation ("Defendant CEC") is a citizen of both Delaware, its state of incorporation, and Illinois, its principal place of business. The only dispute arises in regard to the citizenship of Defendant Sanford Brown College ("Defendant SBC"), specifically its principal

7

place of business.[1] Defendants allege that Defendant SBC's principal place of business is Illinois, the state in which Defendant SBC's corporate offices are located and in which one of its campuses is located. Plaintiffs, on the other hand, allege that Defendant SBC's principal place of business is Missouri, the state in which three of Defendant SBC's campuses are located.[2] Of course, in order for complete diversity to exist, and for this Court to have subject matter jurisdiction, the Defendants must prove, by a preponderance of the evidence, that Defendant SBC's principal place of business is a state other than Missouri.[3]

By applying the total activity test to the situation at hand, and by closely examining all of the corporate activities in which Defendant SBC engages, it is clear to the Court that Missouri is not, in fact, Defendant SBC's principal place of business. There can be no doubt that the "nerve center" of Defendant SBC is in Illinois; its corporate headquarters and the site of corporate decision-making is located in Hoffman Estates, Illinois. Of course, this is not the end of the inquiry, as the total activity test requires that the location of production and service activities must

---

[1] It is undisputed that Defendant SBC is also a citizen of Delaware, its state of incorporation.

[2] There is some confusion regarding the number of total Defendant SBC campuses, due to the fact that the West Allis, Wisconsin campus is no longer being operated by Defendant SBC. In her affidavit, Jill Deatley, Vice President of Regulatory Review for Defendant CEC, testified that the assets of that campus were sold to another entity on May 31, 2008. This lawsuit was initiated prior to that date and, because the citizenship of the parties for the purpose of diversity jurisdiction must be determined at the time the lawsuit is initiated, the Court will deem the West Allis campus as still being operated by Defendant SBC. Thus, for purposes of determining the citizenship of Defendant SBC, the Court will act under the assumption that Defendant SBC operates five total campuses.

[3] It is not necessary that Defendants prove that Defendant SBC's principal place of business is actually Illinois, rather, they must prove that it is any state other than Missouri. Because all Plaintiffs are citizens of Missouri, Defendant SBC can be a citizen of any state in the nation other than Missouri and still meet the diversity requirement. *See, e.g.*, *Capitol Indemnity Corp.*, 367 F.3d at 834-35.

also be considered. While Missouri is home to a significant portion of Defendant SBC's campuses, it is not the sole state in which the corporation operates. Defendant SBC also maintains a campus in Illinois and, at the time the lawsuit was filed, in Wisconsin. In fact, these non-Missouri campuses accounted for approximately 37% of the gross revenues of Defendant SBC in 2007. Additionally, employees in the Illinois corporate office perform a large portion of the administrative tasks for all of Defendant SBC's campuses, including those located in Missouri. These administrative tasks include payroll, human resources, and student billing and collections. The presence of both corporate control and corporate activities in Illinois, something no other state can claim, is sufficient to persuade this court, by a preponderance of the evidence, that Defendant SBC's principal place of business is Illinois, rather than Missouri.[4]

Further justification for this Court's decision can be found through an analysis of the guidelines established by the Third Circuit and the District of South Dakota, as discussed above. The Plaintiffs would like the Court to apply the rule that a corporation with its operating functions in one state and its headquarters in another is a citizen of the former state. While this is a valid assertion of law, it is inapplicable to the present situation. Taking into account the financial contributions made by non-Missouri campuses and the administrative assistance provided by the Illinois corporate office, it is clear that Defendant SBC's operating functions occur in more than one state. Indeed, this appears to be a situation in which the corporation has its nerve center in

---

[4]Plaintiffs assert, without citing to any authority, that Defendant SBC's subsidiary relationship with Defendant CEC is evidence that Defendant SBC has few ties to the state of Illinois. This assertion, however, is incorrect. Absent some allegation that one of the entities is a mere alter ego of the other, or some other allegation of abuse of corporate formation, this Court is to consider "the *actual* day-to-day activities of [the corporation], irrespective of what corporation's name appears on the paychecks of the employees who carry out those activities." *Mennen Co. v. Atl. Mut. Ins. Co.*, 147 F.3d 287, 293 (3rd Cir. 1998).

one state, while its corporate activities occur in several states, with no one state being the obvious heavyweight. In such a situation, the District of South Dakota determined that "the nerve center assumes greater weight in determining where the corporation's principal place of business is located." *Fed. Beef Processors*, 851 F. Supp. at 1433. The Court finds this to be a reasonable conclusion.

Since Defendant SBC's principal place of business is not Missouri, all of the Defendants are citizens of a different state than all of the Plaintiffs. Thus, complete diversity exists and this Court can properly exercise subject matter jurisdiction.

**IV.    CONCLUSION**

The Defendants have proven, by a preponderance of the evidence, that the amount in controversy exceeds $75,000, and that there is complete diversity of citizenship. As a result, this Court has subject matter jurisdiction under 28 U.S.C. § 1332 and removal to federal court was proper. The Plaintiffs' Motion to Remand is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand [doc. #13] is **DENIED**.

Dated this 4th Day of September, 2008.

                                                                                    _E. Richard Webber_
                                                                                    E. RICHARD WEBBER
                                                                                    UNITED STATES DISTRICT JUDGE