UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JANET BLAKE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:08CV00821 ERW |
| | ) |
| CAREER EDUCATION CORPORATION, | ) |
| and SANFORD BROWN COLLEGE, INC., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint [doc. #28].

### **I. BACKGROUND**

On February 29, 2008, Janet Blake, Madison Leuschke, Tish Pate, Holly Moyer, Caley Mason, and Petite Smothers (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, filed a Class Action Petition for Damages against Career Education Corporation and Sanford Brown College, Inc. (collectively, "Defendants"), in the Circuit Court of the County of St. Louis. Defendants removed the case to this Court on June 5, 2008. On February 9, 2009, Plaintiffs filed a First Amended Class Action Complaint for Damages [doc. #27]. In their Amended Complaint, Plaintiffs allege that Defendants violated the Missouri Merchandising Practices Act ("MMPA"), "by purposefully employing a pattern and practice of deception, fraud, and misrepresentation in the sale of the Criminal Justice Degree Programs to potential students." Specifically, Plaintiffs allege that Defendants' employees and agents "made misrepresentations to

[Plaintiffs] which deceived them to believe that associate and/or bachelor criminal justice degrees from [Sanford Brown College, Inc.] were valuable when in reality the degrees had little to no practical value in the real world." (Pls.' Am. Complaint, doc. #27, p.2).

Defendants filed the pending Motion to Dismiss on February 27, 2009, alleging that Plaintiffs' claims are barred by the educational malpractice doctrine. Plaintiffs oppose Defendants' Motion, arguing that this case does not involve educational malpractice, rather the suit alleges a violation of the MMPA. Defendants' Motion is fully briefed and the matter is currently pending before the Court.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a defendant may file a motion to dismiss for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), a court must take all facts alleged in the complaint to be true and must construe pleadings in the light most favorable to the Plaintiff. *Chambers v. St. Louis County*, 247 F.App'x 846, 848 (8th Cir. 2007) (citing *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)).

While a plaintiff does not have to "set out *in detail* the facts upon which he bases his claim, [Federal Rule of Civil Procedure] 8(a)(2) requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 n.3 (2007) (emphasis in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). The factual allegations contained in the

pleading must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must demonstrate his or her entitlement to relief, and "'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Therefore, "the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

## III. DISCUSSION

The sole basis for Defendants' Motion to Dismiss is their argument that Plaintiffs' Complaint fails to state a claim upon which relief may be granted because their sole claim is barred by the doctrine of educational malpractice. "In educational malpractice cases, a plaintiff sues his or her academic institution for *tortiously* failing to provide adequate educational services." *Dallas Airmotive, Inc. v. Flightsafety Int'l, Inc.*, 277 S.W.3d 696, 700 (Mo. Ct. App. 2008). "Missouri, along with most other jurisdictions that have considered the issue, has found that educational malpractice claims are not cognizable because there is no duty." *Id.* at 699. This refusal to recognize such claims is referred to herein as the "doctrine of educational malpractice." There are four general public policy grounds courts cite in refusing to recognize educational malpractice claims:

> (1) the lack of a satisfactory standard of care by which to evaluate an educator; (2) the inherent uncertainties about causation and the nature of damages in light of such intervening factors as a student's attitude, motivation, temperament, past experience, and home environment; (3) the potential for a flood of litigation against schools; and (4) the possibility that such claims will "embroil the courts into overseeing the day-to-day operations of schools."

*Id.* at 701 (quoting *Page v. Klein Tools, Inc.*, 610 N.W.2d 900, 903 (Mich. 2000)).

An educational malpractice claim generally requires "'a comprehensive review of a myriad of educational and pedagogical factors, as well as administrative policies that enter into the consideration of whether the method of instruction and choice of [teaching aids] was appropriate, or preferable.'" *Id.* at 700 (quoting *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 472 (Minn. Ct. App. 1999)) (alteration in original). At the same time, "courts have recognized claims by students for breach of contract, fraud, or other intentional wrongdoing that allege a private or public educational institution has failed to provide *specifically promised educational services*." *Alsides*, 592 N.W.2d at 472. Defendants are correct that "a claim cannot be couched as a fraud claim merely to avoid the doctrine that precludes an educational-malpractice claim." *Christensen v. S. Normal Sch.*, 790 So.2d 252, 256 (Ala. 2001). However, "a student may bring an action against an educational institution for breach of contract, fraud, or misrepresentation, if it is alleged that the institution failed to perform on specific promises it made to the student and the claim would not involve an inquiry into the nuances of educational processes and theories." *Alsides*, 592 N.W.2d at 473 (internal quotations omitted).

Plaintiffs' claim is not one for negligence, rather, Plaintiffs allege that Defendants engaged in a pattern and practice of making misrepresentations to students and potential students of Sanford Brown College, Inc, in violation of the MMPA. Thus, the claim would only be barred if the Court determines that it is "couched as a fraud claim merely to avoid the doctrine that precludes an educational-malpractice claim." *Christensen*, 790 So.2d at 256. In order to determine if Plaintiffs' pattern and practice MMPA claim is an educational malpractice claim in disguise, the Court must examine the various representations that Defendants' representatives made to Plaintiffs, which Plaintiffs allege turned out to be false.

4

All of the alleged misrepresentations listed in Plaintiffs' Amended Complaint are specific promises that Sanford Brown College admissions representatives made to Plaintiffs. As a result, in order for Plaintiffs' MMPA claim to avoid being barred under the doctrine of educational malpractice, the Court's examination of the truthfulness of the individual representations must not involve "inquiry into the nuances of educational processes and theories." *Alsides*, 592 N.W.2d at 472. Most of the alleged misrepresentations listed by Plaintiffs do not involve such an inquiry and, thus, Plaintiffs' pattern and practice MMPA claim is not barred under the educational malpractice doctrine.

First, Plaintiffs allege that Defendants falsely represented that a degree from Sanford Brown College provided a sufficient foundation for law school[1] and that the credits could be transferred to most major universities in Missouri.[2] In examining the truthfulness of these representations, it would not be necessary to inquire into the nuances of educational processes and theories. Rather, the inquiry would merely involve an objective determination of which law schools, if any, accept a degree from Sanford Brown College as sufficient foundation for admission, and which universities, if any, accept transfer credits from Sanford Brown College. This inquiry does not implicate the reasonableness or adequacy of the teaching methods used by Sanford Brown College; it merely examines the admissions and transfer standards established and set forth by other colleges and law schools. *See, e.g.*, *Malone v. Acad. of Court Reporting*, 582

---

[1] This representation was allegedly made to Plaintiff Janet Blake and Plaintiff Petite Smothers.

[2] This representation was allegedly made to Plaintiff Janet Blake, Plaintiff Caley Mason, and Plaintiff Holly Moyer. A similar representation that the actual degree would be accepted by most major universities in Missouri was also made to Plaintiff Janet Blake.

N.E.2d 54, 58-59 (Ohio Ct. App. 1990) (recognizing cause of action for breach of contract and misrepresentation when school falsely represented that it was accredited). Thus, Plaintiffs' use of these alleged misrepresentations to support their pattern and practice claim is not barred under the educational malpractice doctrine.

Next, Plaintiffs allege that Defendants falsely represented that tuition would be a set or fixed amount[3] and either that the cost of books was included in tuition[4] or that students were required to purchase all of their books through Sanford Brown College.[5] In examining the truthfulness of these representations, the trier of fact is not required to inquire into the nuances of educational processes and theories. To the contrary, the determination of whether tuition was fixed or whether books were included merely requires a review of relevant documents and records, for example, the billing statements received by students. The determination of whether students were required to purchase all of their books through Sanford Brown College would only require an examination of the school's policies and rules to determine if such a policy existed and was enforced.[6] The adequacy of the education provided is not at issue and, thus, Plaintiffs' use of these alleged misrepresentations to support their pattern and practice claim is not barred under the educational malpractice doctrine.

---

[3]This representation was allegedly made to Plaintiff Janet Blake and Plaintiff Caley Mason.

[4]This representation was allegedly made to Plaintiff Caley Mason, Plaintiff Petite Smothers, and Plaintiff Madison Leuschke.

[5]This representation was allegedly made to Plaintiff Janet Blake, Plaintiff Holly Moyer, and Plaintiff Tish Pate.

[6]It is important to note that the inquiry is not into the reasonableness of Defendants' policies and rules; rather, the relevant issues are whether such a policy even existed, and if so, whether it was enforced.

Next, Plaintiffs allege that Defendants falsely represented that students would participate in hands-on training.[7] Again, in examining the truthfulness of this representation, it would not be necessary to inquire into the nuances of educational processes and theories. This is not a claim "that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service at all." *Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992). The relevant inquiry would be whether hands-on training was provided at all, not whether it was adequate or appropriate. *See, e.g.*, *Alsides*, 592 N.W.2d at 474 n.3 (finding that trial court erroneously dismissed claim alleging that students were falsely promised that they would have hands-on training); *Ryan v. Univ. of N.C. Hosps.*, 494 S.E.2d 789, 791 (N.C. Ct. App. 1998) (recognizing cause of action for breach of contract based on University's failure to provide month-long gynecology rotation, as promised). Thus, Plaintiffs' use of this alleged misrepresentation to support their pattern and practice claim is not barred under the educational malpractice doctrine.

Next, Plaintiffs allege that Defendants falsely represented that students needed to enroll quickly because the class was almost full.[8] In examining whether this representation was false, the trier of fact would not need to inquire into the nuances of educational processes and theories. Ruling on this issue would merely require an inquiry into the capacity of the class and how many students were actually enrolled in the class at the time that the representation was made. This inquiry in no way requires consideration of the adequacy of the education received. Plaintiffs' use

---

[7]This representation was allegedly made to Plaintiff Caley Mason, Plaintiff Petite Smothers, and Plaintiff Madison Leutschke.

[8]This representation was allegedly made to Plaintiff Holly Moyer.

7

of this alleged misrepresentation to support their pattern and practice claim is not barred under the educational malpractice doctrine.

Plaintiffs also allege that Defendants made various false representations about what students could expect after graduating from Sanford Brown College. Two of these representations, that graduates can expect to earn between $40,000 and $47,000[9] and that most graduates secure a job within one month,[10] clearly do not implicate the educational malpractice doctrine. Rather, they "involve an assertion of historical fact that would not require any inquiry into educational methods or policies." *Jamieson v. Vatterott Educ. Ctrs., Inc.*, 2009 WL 2143823, at *16 (D. Kan. July 15, 2009). Two similar representations, that a particular student could expect to have a good paying job within six months[11] and that job placement was guaranteed,[12] also do not implicate the educational malpractice doctrine. Ruling on these representations merely requires an inquiry into the employment situation of the students, and not the adequacy of their education. If, however, the issue becomes one of *why* a particular student was not hired, it is likely that the educational malpractice doctrine would come into play.[13] *See id.*

---

[9]This representation was allegedly made to Plaintiff Janet Blake.

[10]This representation was allegedly made to Plaintiff Holly Moyer.

[11]This representation was allegedly made to Plaintiff Holly Moyer.

[12]This representation was allegedly made to Plaintiff Janet Blake, Plaintiff Holly Moyer, Plaintiff Tish Pate, and Plaintiff Madison Leuschke.

[13]Such an inquiry would implicate and violate one of the general public policy grounds that courts cite in rejecting educational malpractice claims, specifically that there are "inherent uncertainties about causation and the nature of damages in light of such intervening factors as a student's attitude, motivation, temperament, past experience, and home environment." *Dallas Airmotive, Inc. v. Flightsafety Int'l, Inc.*, 277 S.W.3d 696, 701 (Mo. Ct. App. 2008).

As the representations currently stand, they appear to be more analogous to statements of historical fact and, thus, Plaintiffs' use of these alleged misrepresentations to support their pattern and practice claim is not barred under the educational malpractice doctrine.

None of the alleged misrepresentations discussed thus far implicate the educational malpractice doctrine. Because at least some of the alleged misrepresentations set forth by Plaintiffs are not barred, the Court finds that Plaintiffs have alleged facts sufficient to support their pattern and practice MMPA claim. However, the Court finds that two of the alleged misrepresentations do implicate the educational malpractice doctrine and cannot be used to support Plaintiffs' claim. While this finding does not affect the Court's ultimate decision to deny Defendant's Motion to Dismiss, it is necessary to identify which alleged misrepresentations should not be used by Plaintiffs to prove their pattern and practice MMPA claim.

First, Plaintiffs allege that Defendants falsely represented that Sanford Brown College instructors were qualified and had experience.[14] In examining whether this representation was false, the trier of fact would have to inquire into the nuances of educational processes and theories. Specifically, ruling on this issue would require an examination of the adequacy of the teaching staff, which would involve "'a comprehensive review of a myriad of educational and pedagogical factors, as well as administrative policies that enter into the consideration of whether the method of instruction and choice of [teaching aids] was appropriate, or preferable.'" *Dallas Airmotive, Inc. v. Flightsafety Int'l, Inc.*, 277 S.W.3d 696, 700 (Mo. Ct. App. 2008) (quoting *Alsides*, 592 N.W.2d at 472)) (alteration in original); *see also Jamieson*, 2009 WL 2143823, at

---

[14]This representation was allegedly made to Plaintiff Tish Pate and Plaintiff Madison Leuschke.

9

*15 (finding that a claim is barred under the educational malpractice doctrine because "[t]hey appear to be challenging the adequacy of Vatterott's curriculum, teachers, and/or method of teaching"). Moreover, such an inquiry would implicate and violate the general public policy grounds courts cite in refusing to recognize educational malpractice claims, specifically that there is a "lack of a satisfactory standard of care by which to evaluate an educator." *Dallas Airmotive*, 277 S.W.3d at 701. Thus, Plaintiffs cannot use this alleged misrepresentation to support their pattern and practice claim, as it is barred under the educational malpractice doctrine.

Additionally, Plaintiffs allege that Defendants falsely represented that a Sanford Brown College criminal justice degree would provide a sufficient foundation to begin a private investigation business.[15] Again, in examining whether this representation was false, it would be necessary to inquire into the nuances of educational processes and theories. Plaintiffs' allegation that the degree did not provide a sufficient foundation requires an analysis of the adequacy of the education received, which is prohibited under the educational malpractice doctrine. *See Dallas Airmotive*, 277 S.W.3d at 700 ("A claim that educational services provided were inadequate, substandard, or ineffective constitutes a claim of educational malpractice."). Moreover, Plaintiffs have "not specified any fundamental deficiency in [the] course of instruction," nor have they "identified any benchmark by which the course could be said to be lacking an objectively identifiable component." *Jamieson*, 2009 WL 2143823, at *19 (finding that an allegation of lack of sufficient training to pass an exam is barred under the educational malpractice doctrine). Thus, Plaintiffs cannot use this alleged misrepresentation to support their pattern and practice claim, as it is barred under the educational malpractice doctrine.

---

[15]This representation was allegedly made to Plaintiff Tish Pate.

## IV. CONCLUSION

Despite the presence of two alleged misrepresentations that implicate the doctrine of educational malpractice, the Court finds that Plaintiffs have alleged facts sufficient to support their pattern and practice MMPA claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint [doc. #28] is **DENIED**.

Dated this 17th Day of August, 2009.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE